**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

DAVID P. HAYES, TRUSTEE FOR THE )
PAUL B. HAYES FAMILY TRUST, )
DATED APRIL 30, 2010, )
                      )
       Plaintiff, )
                      )
v. )       Case No. 14-CV-495-GKF-PJC
                      )
CHAPARRAL ENERGY, LLC, and )
UNITED STATES OF AMERICA; )
DEPARTMENT OF INTERIOR; )
BUREAU OF INDIAN AFFAIRS, )
                      )
       Defendants, )
                      )
v. )
                      )
OSAGE MINERALS COUNCIL, )
                      )
       Intervenor-Defendant. )

## OPINION AND ORDER

Before the court is the Motion to Dismiss for Failure to Join a Necessary and Indispensable Party [Dkt. #132] of intervenor-defendant the Osage Minerals Council ("OMC" or "the Council"). The Council seeks to dismiss this action pursuant to Federal Rule of Civil Procedure 19 for plaintiff's failure to join the Council as a party-defendant.

This case arises from a dispute over the government's obligations under the National Environmental Policy Act ("NEPA") with regard to its approval of an oil and gas lease and two (2) drilling permits in Osage County, Oklahoma. In 2013, Chaparral Energy, LLC ("Chaparral") entered into an oil and gas lease with the OMC for a portion of the Osage mineral estate underlying plaintiff David P. Hayes's surface estate. Shortly thereafter, the Bureau of Indian Affairs approved the lease as well as Chaparral's applications for permits to drill on Hayes's

property.  In August 2014, Hayes brought this action against defendants the United States of America, the Department of Interior ("DOI"), the Bureau of Indian Affairs ("BIA") (collectively, "the government"), and Chaparral, alleging that the government's approval of the lease and drilling permits failed to comply with NEPA.  In response, the government asserted that its approval of the lease was categorically excluded from NEPA's procedural requirements and that it had already satisfied those requirements with regard to its approval of the drilling permits.

On December 21, 2015, the court issued an Opinion and Order ruling that the government's approval of the Chaparral lease and drilling permits failed to comply with NEPA and, consequently, declaring those documents void.  [*See* Dkt. #98].  On January 5, 2016, the court issued an amended Opinion and Order which contained minor corrections not impacting the outcome.  [Dkt. #111].

On January 21, 2016, the court granted the OMC's request to intervene in this case for the limited purpose of filing its present motion to dismiss.  Chaparral supports the Council's motion.  Hayes and the government oppose it.

## I.    DISCUSSION

"Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party."  *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  First, the court must determine whether the absent party is "required."  *Id.*  A party is required if

> **(A)**  in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)**  that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If the absent person is [required], the court must then determine whether joinder is 'feasible.'" *Citizen Potawatomi Nation*, 248 F.3d at 997. Finally, if joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed," Fed. R. Civ. P. 19(b)—that is, whether the absent party is "indispensable," *see Citizen Potawatomi Nation*, 248 F.3d at 997.

Here, because the OMC is part of the Osage Nation, and thus possesses sovereign immunity, its joinder in this case is not feasible. *See id.* Accordingly, the court will consider whether the Council is required and, if so, whether it is also indispensable.

### A. Whether the OMC is a Required Party

As just mentioned, Rule 19(a) sets forth two circumstances in which an absent party is considered "required." The OMC contends that it qualifies as required under both. The court considers these issues in turn.

### 1. According Complete Relief—Rule 19(a)(1)(A)

Under Rule 19(a)(1)(A), a party is considered "required" if, in its "absence, the court cannot accord complete relief among [the] existing parties." This provision "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." Fed. R. Civ. P. 19 advisory committee's note to 1966 Amendment. Importantly, whether relief is "complete" under the rule "is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) (quoting *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)). "In other words, joinder is required only when the absentee's nonjoinder precludes the court from rendering complete justice *among those already*

*joined*." 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.03[2][b][ii] (3d ed. 2014) (emphasis in original) (collecting cases); *accord Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985).

Here, the OMC contends that the court cannot accord complete relief in its absence because, as a nonparty, it will not be bound by the court's judgment.  In response, Hayes and the government submit that this action focuses solely on the propriety of the government's approval of the Chaparral lease and, consequently, that the Council's presence is unnecessary to accord complete relief among the existing parties.

The court agrees with Hayes and the government.  Hayes seeks a declaration that the government's approval of the Chaparral lease and, consequently, the lease itself are invalid. As set forth in his complaint, he intends to use that declaration as the basis for pursuing a trespass action against Chaparral.  Chaparral and the government are already parties to this litigation. Given the relief requested, their presence in this case is all that is needed for the court to accord complete relief *among the existing parties.  Cf. Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001) ("Because plaintiffs' action focuses solely on the propriety of the Secretary's determinations, the absence of the Wyandotte Tribe does not prevent the plaintiffs from receiving their requested declaratory relief . . . ."); *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992) (finding "complete relief" where the court could grant the relief requested in the complaint without joinder of an absent party).  Put differently, the absence of the OMC will not render the court's adjudication of Hayes's claims against Chaparral and the government any less complete.  That the court's decision could potentially spawn future litigation between an existing party and the OMC does not change this conclusion.  *See*

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006) ("While there is no question that further litigation [involving an absent party] is inevitable if MasterCard prevails in this lawsuit, Rule 19(a)(1) is concerned only with those who are already parties.").[1] The court, therefore, concludes that the OMC is not a required party under Rule 19(a)(1)(A).

    2.  <u>Interest Relating to the Subject of the Action—Rule 19(a)(1)(B)</u>

Under Rule 19(a)(1)(B), an absent party is considered "required" if it claims an interest relating to the subject of the action and is so situated that disposing of the action in its absence may as a practical matter (1) impair its ability to protect that interest or (2) subject an existing party to a substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B). As a general rule, this provision regards all parties to a contract as required in a suit seeking to set aside the contract. *See Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 (10th Cir. 1987) ("[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975)); Moore, *supra*, § 19.06[4] ("Generally, . . . courts will find parties to a contract to be necessary in an action to set aside the contract."). Importantly, however, this provision does not require joinder of an absent party if that party's interests are adequately represented by an

---

[1] *See also Angst*, 77 F.3d at 705 ("The possibility that the successful party to the original litigation might have to defend against a subsequent suit by [an absent party] does not make the [absentee] a necessary party to the action."); *Gwartz v. Jefferson Mem'l Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (noting that the focus of Rule 19(a)(1)(A) "is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person" (internal quotation marks omitted)); Moore, *supra*, § 19.03[2][b][ii] ("Rule [19(a)(1)(A)] is not invoked simply because some absentee may cause future litigation. The effect of a decision in the present case on the absent party is immaterial under the 'complete relief' clause. The fact that the absentee might later frustrate the outcome of the litigation does not by itself make the absentee necessary for complete relief." (footnotes omitted)).

existing party.  *See Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (holding that a tribe was not a required party to a suit challenging a government action where the interests of governmental defendants were "substantially similar, if not identical, to the Tribe's interests in upholding the" action); *Sac & Fox Nation*, 240 F.3d at 1259 (same).  Representation is ordinarily adequate when an existing party shares the same objectives and is likely to assert the same arguments as the absent party.  *See Sac & Fox Nation*, 240 F.3d at 1259; *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012); *cf. Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior,* 100 F.3d 837, 845 (10th Cir. 1996) (noting, in the Rule 24 context, that "representation is adequate when the objective of the applicant for intervention is identical to that of one of the parties" (internal quotation marks omitted)).

Here, the OMC claims an interest in this litigation based on its lease agreement with Chaparral which the court's ruling declared void.  In response, Hayes submits that the OMC's interest in the lease is unaffected because the court's ruling did not declare the lease permanently invalid, but rather determined that a condition precedent to the effectiveness of the lease—valid approval by the Superintendent—had not been performed.  Put differently, Hayes contends that the OMC's interests are unaffected because the court's ruling has merely "taken [the] [l]ease to the status it held on the day prior to when the Superintendent improperly approved" it.  [Dkt. #139, p. 13].  Alternatively, Hayes (joined by the government) submits that the OMC is not a required party because the government has adequately represented its interests throughout this litigation.

The court agrees with Hayes's second argument, but not with his first.  Although Hayes is correct that the court's ruling merely declares that the lease is not *yet* legally operative, [*see*

- 6 -

Dkt. #111, p. 10 n.2]; *see also infra* Section I.B.5, the OMC nonetheless has an interest in maintaining the validity of the Superintendent's approval and, by extension, the validity of its lease.  Protection of this interest, however, does not require the OMC's joinder.  Whether the Chaparral lease is presently valid depends entirely on whether the government's approval of the lease complied with NEPA.  [*See* Dkt. #111, p. 10 n.2].  The government is more than capable of defending its actions and has forcefully done so here.[2]  Because the government's interest in defending its approval of the lease is virtually identical to that of OMC, the potential for prejudice to the OMC's interests is greatly reduced.  *See Kansas*, 249 F.3d at 1226; *Sac & Fox Nation*, 240 F.3d at 1259.  For this reason, the court finds that joinder of the OMC is, as a practical matter, unnecessary for the OMC to protect its interest.  As for Rule 19(a)(1)(B)(ii), there is nothing in the record indicating that the OMC's absence is likely to subject an existing party to multiple or inconsistent obligations.[3]  For these reasons, the court concludes that the OMC is not a required party under Rule 19(a)(1)(B).

---

[2] Although the Tenth Circuit has stated that the government's representation of a tribe's interest will ordinarily be inadequate in a NEPA case, *see Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977) (noting that an agency's duty to comply with NEPA may conflict with a tribe's financial interests), here—unlike the usual case—the court has had the benefit of actually having observed the government's defense of its NEPA compliance.  As just mentioned, the government forcefully defended its approval of the lease throughout this litigation.  After having observed the government's defense, the court is convinced that its representation of the OMC's interests was adequate and unaffected by any potential conflict of interest.

[3] The OMC contends that its absence will expose the existing parties to a substantial risk of multiple or inconsistent obligations.  [*See* Dkt. #132, p 8].  Notably, the Council does not identify any specific future litigation it expects to take place among the existing parties (about *this* lease) that would give rise to such a scenario.  Although the Council at one point suggests that it could sue the BIA for damages, such litigation would be barred by sovereign immunity.  Without a more specific showing, the court is not convinced that a ruling in the OMC's absence will subject an existing party to "substantial" risk of multiple or inconsistent obligations.

### B.  Whether the OMC is an Indispensable Party

Assuming *arguendo* that the OMC is a required party, the court is not convinced that its inability to be joined requires dismissal.  Rule 19(b) sets forth the following factors for determining whether an absent party is indispensable:

> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> **(2)** the extent to which any prejudice could be lessened or avoided by:
> >  **(A)** protective provisions in the judgment;
> >  **(B)** shaping the relief; or
> >  **(C)** other measures;
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).[4]  "Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case."  *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997).  The court considers these factors in turn.

### 1.  Prejudice from a Judgment Rendered in the OMC's Absence (Factor 1)

The court starts by considering the extent to which the OMC might be prejudiced by a judgment rendered in its absence.  As the Tenth Circuit has observed, "the prejudice inquiry under Rule 19(b) is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest."  *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003) (internal quotation marks omitted).

---

[4] "[A]lthough the word 'indispensable' no longer appears in text of Rule 19(b) since the 2007 amendments, it is still used to denote a required party in whose absence the action cannot proceed." *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279 n.3 (10th Cir. 2012).

Here, as just mentioned, the OMC's interest in this litigation is, primarily, in preserving the validity of its lease with Chaparral.  The government shares this same interest and has forcefully defended its approval of the lease throughout this litigation.  Under such circumstances, "the potential [for] prejudice to [the OMC's] interest is offset in large part by the fact that the [government's] interest[] in defending [its approval of the lease is] . . . virtually identical . . . to [that] of the [OMC]."  *Sac & Fox Nation*, 240 F.3d at 1260; *accord Kansas*, 249 F.3d at 1227.

This, however, does not end the court's inquiry.  In addition to its interest in the lease, the OMC also claims a broader interest in not having its legal duties judicially determined without its consent.  This interest, the OMC asserts, leaves "very little room for the balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves."  [Dkt. #132, p. 9 (quoting *Enter. Mgmt. Consultants, Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989))].  Although immunity is a weighty concern, that interest is not "so compelling by itself as to eliminate the need to weigh the four Rule 19(b) factors."  *Davis v. United States*, 192 F.3d 951, 960 (10th Cir. 1999) (distinguishing statements in *Enterprise Management* as dicta).[5]  As discussed below, here, there are other considerations which weigh heavily against the OMC's immunity interest.

---

[5] The OMC contends that the Supreme Court's decision in *Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008), requires dismissal of the present case.  The court disagrees.  *Pimentel* involved an interpleader action to determine the ownership of property allegedly stolen by the former president of the Philippines.  On appeal, the Supreme Court concluded that the action could not proceed without the Republic of the Philippines ("the Republic") and the Philippine Presidential Commission on Good Governance ("the Commission"), both of which had been dismissed from the case after invoking sovereign immunity.  Although the Court's analysis discussed sovereign immunity as an overriding concern, *see id.* at 867, *Pimentel* is distinguishable from the case at bar in several important respects.  Unlike the present case, *Pimentel* did not involve a claim seeking review of an agency's compliance with a federal

2.   Potential to Lessen or Avoid Prejudice (Factor 2)

Under the second Rule 19(b) factor, the court considers the extent to which any prejudice to the absent party could be lessened or avoided.  This "factor calls the court's attention to the possibility of granting remedies other than those specifically requested that would not be merely partial or hollow but would minimize or eliminate any prejudicial effect of going forward without the absentees."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1608, at 105 (3d ed. 2001); *cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 112 (1968) (directing that "court[s] should consider modification of a judgment as an alternative to dismissal").

Here, the government is the only party to propose remedial alternatives to lessen or avoid prejudice to the OMC.  Specifically, it contends that the court could eliminate any prejudice to the OMC by simply identifying the legal error in the government's decision and remanding the case to the agency without voiding the lease.

The government's argument is unpersuasive.  It attempts to draw a distinction between declaring that the Superintendent's approval of a lease violates NEPA and declaring the lease itself invalid.  As noted in the court's prior Opinion and Order, such a distinction is incompatible with the Tenth Circuit's decision in *Sangre de Cristo Development Co. v. United States*,  932

_____

statute, nor was there any finding that an existing party adequately represented the Republic or the Commission's interests.  Finally, and perhaps most important, the parties in *Pimentel* had an alternative forum in which to resolve their dispute.  *See id.* at 867-68, 873 (noting that the parties to the interpleader action could still obtain an adequate remedy in the Sandiganbayan, a Philippine court with special jurisdiction over corruption cases).  Given these differences, the court is not convinced that *Pimentel* requires dismissal of the present case. *See Dine Citizens Against Ruining Our Env't v. U.S. Office of Surface Mining Reclamation & Enf't*, No. 12-CV-1275-AP, 2013 WL 68701, at *3-4 (D. Colo. Jan. 4, 2013) (distinguishing *Pimentel* on similar grounds); *see also infra* Sections I.B.4, 5 (discussing the importance of these other considerations).

F.2d 891 (10th Cir. 1991) (hereinafter, *Sangre*).  A closer examination of that decision highlights the error in the government's argument.

*Sangre* was the second chapter in a dispute first addressed by the Tenth Circuit in *Davis v. Morton*, 469 F.2d 593 (10th Cir. 1972).  *Davis* involved a challenge to the DOI's approval of a 99-year lease of restricted Indian lands between the Pueblo of Tesuque ("Pueblo"), as lessor, and the Sangre de Cristo Development Company ("Sangre"), as lessee.  *See id.* at 594.  The plaintiffs in *Davis* were a group of neighboring landowners and environmental groups.  They alleged that the DOI was "without authority to grant the lease since no environmental impact study was conducted prior to approval of the lease as required by NEPA."  *Id.*  The sole issue in *Davis* was whether the DOI's approval of a lease on Indian lands constituted major federal action subject to NEPA.  *See id.* at 595-96.  The Tenth Circuit concluded that it did, thereby reversing the judgment of the district court and remanding the case "with directions to grant the relief prayed for."  *Id.* at 598.  Notably, that relief consisted of "a preliminary injunction enjoining future work by Sangre on the leased premises," as well as "a preliminary and permanent injunction enjoining [the government] from approving, allowing or acting in any way on submissions or approvals required or permitted under the lease agreement until the environmental impact of the project had been studied and evaluated."  *Id.* at 594-95.

In the years following *Davis*, a variety of entities, including the BIA and Sangre, worked to prepare an environmental impact statement ("EIS") for the project.  *See Sangre*, 932 F.2d at 893.  Before the EIS could be finalized, however, "the Pueblo, under new tribal leadership, began to express reservation regarding the lease" and, eventually, "requested that the Department void the lease."  *Id.*  In response, the DOI rescinded its approval of the lease.  *See id.*  Based on this action, Sangre filed suit against the government alleging, among other claims, that the DOI's

withdrawal of its approval of the lease constituted a taking under the Fifth Amendment, thereby

entitling it to just compensation.  *See id.* at 894.

The district court rejected Sangre's argument, and the Tenth Circuit affirmed.  In doing

so, the circuit concluded that Sangre's interest in the lease never vested because, without valid

approval, the lease was never legally operative:

> In *Davis v. Morton* we instructed the district court to grant the relief
> requested by the environmental groups and the neighboring landowners: "the case
> is remanded to the trial court with directions to grant the relief prayed for."
> *Davis,* 469 F.2d at 598. . . . Sangre contends that this language indicates that we
> did not invalidate the lease, but that we simply enjoined the project from
> continuing until the NEPA requirements were fulfilled.  We disagree.  We held
> that the initial approval of the lease by the Department was invalid because it was
> not preceded by the requisite environmental study.  That the requested relief only
> sought an injunction against future action did not narrow the holding that the lease
> itself had never been validly approved.
>
> In order for the lease to have been valid, the Department's approval was
> required . . . . [*See*] 25 U.S.C. § 415(a) (1970).  Further, not just any Departmental
> approval would suffice—the approval must have been a valid approval.  *See Gray
> v. Johnson,* 395 F.2d 533, 537 (10th Cir. [1968]) . . . .  In *Davis* we agreed with
> the environmental groups and the neighboring landowners that the Department
> was "without authority to grant the lease since no environmental impact study was
> conducted prior to approval of the lease as required by NEPA . . . ."  *Davis,* 469
> F.2d at 594.  Because we read 25 U.S.C. § 415(a) as requiring a valid approval
> from the Department in order for the lease contract to have legal effect, the
> invalid lease contract between Sangre and the Pueblo *vested no property interest
> in Sangre.*
>
> The Department's . . . action, regardless of whether it is referred to as a
> recision or merely a failure to approve, did not divest Sangre of a leasehold
> interest because Sangre's interest never vested in the first place.  Therefore, we
> affirm the district court's dismissal of Sangre's Fifth Amendment takings claim.

*Id.* at 894-95 (emphasis added).

*Sangre* forecloses the government's argument.  As *Sangre* makes clear, there is no

meaningful distinction between a ruling that the Superintendent's approval of a lease violates

NEPA and a ruling declaring the lease itself invalid:  if an agency fails to comply with NEPA

before approving a lease, that approval and, consequently, the lease itself are of no legal effect. The court, therefore, declines the government's proposed remedial alternative.[6]

As far as other remedies, the court finds no other remedial alternatives that would lessen or avoid prejudice to the OMC while according complete relief to Hayes. Nevertheless, because the government here forcefully defended the validity of the Chaparral lease, the lack of remedial alternatives is not as weighty a concern. *See Sac & Fox Nation*, 240 F.3d at 1260 ("[T]he potential of prejudice to [the Wyandotte Tribe's] interest is offset in large part by the fact that the Secretary's interests in defending his decisions are substantially similar, if not virtually identical, to those of the Wyandotte Tribe. . . . Because the potential for prejudice is minimal, we need not be concerned with the second factor, which addresses the availability of means for lessening or avoiding prejudice." (internal quotation marks omitted)).

3. <u>Adequacy of a Judgment Rendered in the OMC's Absence (Factor 3)</u>

The third Rule 19(b) factor requires the court consider "whether a judgment rendered in the [OMC's] absence would be adequate." Fed. R. Civ. P. 19(b)(3). This "factor is intended to address the adequacy of the dispute's resolution. The concern underlying this factor is not the plaintiff's interest but that of the courts and the public in complete, consistent, and efficient settlement of controversies, that is, the public stake in settling disputes by wholes, whenever

---

[6] Despite this determination, the court nonetheless agrees that some modification and clarification of its order of January 5, 2016, is warranted. As an initial matter, the court notes that the order should be modified to remand the case back to the agency for further administrative proceedings. Additionally, as evidenced by the parties' arguments on this motion, there appears to be some misunderstanding as to the meaning of the statement declaring the lease void ab initio. By this statement, the court did not mean to suggest that the lease is permanently invalid. Rather, the court meant that the government's approval of the lease was invalid and, consequently, that the lease is not yet (and has never been) legally operative. The court will enter a second amended opinion and order including a remand and clarifying the relief entered.

possible." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1293 (10th Cir. 2003) (citation omitted) (internal quotation marks omitted); *accord Pimentel*, 553 U.S. at 870.[7]

Here, the OMC submits that a judgment rendered in its absence would generate further litigation and, thus, would be inadequate.  In response, Hayes and the government contend that a judgment among the existing parties would fully resolve the issues in this case and that the risk of further litigation over the Chaparral lease is minimal.

Again, the court agrees with Hayes and the government.  As previously noted, the OMC's presence in this case is not needed to accord complete relief among the existing parties. *See supra* Section I.A.1; *see also Sac & Fox Nation*, 240 F.3d at 1260.  Further, despite its predictions, the OMC does not identify any specific future litigation (about *this* lease) that it expects to occur.  Although future litigation is certainly possible (as it is in any case), the court is not convinced that such litigation is likely or, more importantly, that it could be avoided by joining the OMC as a party.  Accordingly, the court finds that this factor weighs against dismissal.

4.   Adequate Remedy in Alternative Forum (Factor 4)

Finally, the court must consider "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b)(4).  Here, Hayes seeks a declaration that the government's approval of the Chaparral lease failed to comply with NEPA and, consequently, that the lease is invalid.  Were the court to dismiss this case for nonjoinder,

---

[7] *See also* Wright & Miller, *supra*, § 1608, at 114 (noting that the third Rule 19(b) factor "promotes judicial economy by avoiding going forward with actions in which the court may end up rendering hollow or incomplete relief because of the inability to bind persons who could not be joined").

there would be no other forum to raise this challenge.[8]  Thus, this fourth favor weighs against dismissal.

    5.  <u>Weighing the Factors</u>

The issue of indispensability in this case turns on two competing concerns:  the tribe's immunity interest and absence of an alternative forum.  The former concern weighs in favor of dismissal, whereas the latter counsels in favor of allowing the present order to stand.  The Tenth Circuit has described both considerations as compelling and, depending on the circumstance, has treated each as entitled to controlling weight.[9]

Hayes and the government submit that the lack of an alternative forum is the dominant concern.  They contend that dismissal would insulate a significant category of agency action

---

[8] The OMC submits that Hayes could obtain an adequate remedy through procedures designed to compensate surface owners for damages suffered due to oil and gas operations on their land. This contention lacks merit.  The procedures identified do not provide a forum for Hayes's NEPA or trespass claims.  *See* 25 C.F.R. §§ 226.40, 226.41.  Under such circumstances, the court cannot regard this remedy as adequate.  *See Manygoats*, 558 F.2d at 559; *Sac & Fox Nation*, 240 F.3d at 1260.

[9] *Compare N. Arapaho Tribe*, 697 F.3d at 1283 ("The parties do not dispute that dismissal of this action leaves the Northern Arapaho with no remedy at all, let alone an adequate one.  But this fact, while unsatisfying, does not preclude dismissal, particularly when viewed in light of the Tribe's sovereign immunity and the first three Rule 19(b) factors." (alteration omitted) (internal quotation mark omitted)), *and Enter. Mgmt. Consultants, Inc.*, 883 F.2d at 894 ("When, as here, a [required] party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." (internal quotation marks omitted), *with Sac & Fox Nation*, 240 F.3d at 1260 (concluding that the Wyandotte Tribe was not an indispensable party to an action challenging the government's taking of land into trust for the tribe and describing the absence of an alternative forum as "perhaps the most important" factor), *and Davis*, 192 F.3d at 960 (stating that tribal immunity is not "so compelling by itself as to eliminate the need to weigh the four Rule 19(b) factors" and distinguishing statements in *Enterprise Management* as dicta).  *See also Davis ex rel. Davis*, 343 F.3d at 1293-94 (reconciling *Davis* and *Enterprise Management* as meaning "that [a] plaintiff's inability to obtain relief in alternative forum is not as weighty a factor when the source of that inability is a public policy that immunizes the absence person from suit").

from judicial review, producing "an anomalous result" that the Tenth Circuit has warned courts to avoid.  *See Manygoats*, 558 F.2d at 559 (reversing district court's dismissal of a NEPA action for nonjoinder of an Indian tribe, where dismissal would mean that "[n]o one, except the Tribe, could seek review of an [EIS] covering significant federal action relating to leases or agreements for development of natural resources on Indian lands").  In response, the OMC asserts that the present lawsuit challenges the validity of an existing lease and, thus, is more damaging to the tribe's sovereignty interest than an ordinary NEPA action.  This circumstance, according to the OMC, distinguishes the present case from *Manygoats* and brings it within the Tenth Circuit's decision in *Tewa Tesuque v. Morton*, 498 F.2d 240 (10th Cir. 1974).

     *Tewa Tesuque* involved a dispute over the same 99-year lease addressed in *Davis* and *Sangre*.  *See* 498 F.2d at 242.  Shortly after the court's decision in *Davis*, fifty members of the Pueblo tribe—each of whom were also members of the Tewa Tesuque ("Tewa"), an unincorporated association of Pueblo members—filed suit against the government and Sangre seeking cancellation of the 99-year lease.  *See id.*  In support of such relief, the Tewa alleged seven causes of action, including "violation of NEPA by failure to prepare an [EIS]," "fraud by appellees in the negotiations for the lease," and "creation and maintenance of a public nuisance." *Id.*  The district court dismissed the action for failure to join the Pueblo as a party, and the Tenth Circuit affirmed.  In doing so, the Tenth Circuit concluded that cancellation of a lease to which the Pueblo was party rendered the tribe necessary and indispensable:

> In considering the first factor, we conclude that the Pueblo would be prejudiced by a judgment in its absence.  If the lease is cancelled it would lose its rental income to be derived therefrom, together with employment opportunities for its members.  With reference to the second factor, we hold that the above recited prejudice cannot be lessened if the lease is cancelled.  Relating to the third factor, we hold that the judgment sought herein would not be adequate in the Pueblo's absence because it may very likely invite additional lawsuits.  Under the last factor, we hold that the Tewa has an adequate remedy available, i.e., bringing the

- 16 -

>dispute before the tribal council of the Pueblo for determination.  This, we
>believe, is very critical in light of our well-established policy-rule that courts will
>not interfere with the internal workings of Indian tribes.  *Motah v. United States*,
>402 F.2d 1 (10th Cir. 1968); *Prairie Band of Pottawatomie Tribe of Indians v.
>Puckkee*, 321 F.2d 767 (10th Cir. 1963).  An internal dispute such as this should
>be decided by the tribal council of the Pueblo and not by the courts.

*Id.* at 242-43.  In so ruling, the court distinguished *Davis* as involving injunctive relief rather

than cancellation:

>The Tewa contend that the issue of indispensability of the Pueblo [was]
>decided in . . . *Davis v. Morton*, 469 F.2d 593 (10th Cir. 1972). . . . The *Davis*
>case held, under the same 99-year lease, that approvals of the lease would be
>enjoined until an environmental impact statement had been filed.  The Court also
>held that approval of leases on federal lands constitutes major federal action.  The
>suit did not, however, result in cancellation of the lease.  *Davis* did not involve the
>issue of indispensability of the Pueblo.  Any prayer for relief insofar as it relates
>to the allegations set forth in the second and third causes of action in the
>complaint, i.e., violation of NEPA by failure to prepare an Environmental Impact
>Statement and violation of 25 U.S.C.A. § 415 by federal officials, has been
>rendered moot by our decision in *Davis*.  The Court did not err in dismissing the
>action for failure to join the Pueblo as an indispensable party.

*Id.* at 243.

*Manygoats* was decided three years after *Tewa Tesuque*.  Like *Davis* and *Tewa*, it also

involved a NEPA challenge to the DOI's approval of a lease on Indian lands.  *See* 558 F.2d at

557.  The plaintiffs in *Manygoats* were a group of seventeen members of the Navajo Tribe.  They

filed suit against the Secretary of the Interior, seeking to enjoin the performance of an agreement

in which the Navajo Tribe granted Exxon Corporation the right to explore for and mine uranium

on tribal lands.  *See id.*  The plaintiffs alleged that the Secretary's approval of the agreement was

based on an inadequate EIS and thus violated NEPA.  The district court dismissed the action for

failure to join the Tribe as an indispensable party.  The Tenth Circuit reversed, concluding that

the Navajo Tribe was not indispensable.  *See id.* at 559.  In so ruling, the court emphasized that

the plaintiffs were not seeking cancellation of the lease (as was the case in *Tewa*) and that

dismissal would effectively insulate the DOI's approval from judicial review:

> In their assertion of indispensability, the appellees rely on *Tewa Tesuque v. Morton*, 10 Cir., 498 F.2d 240, cert. denied, 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440. . . .
>
> From the facts stated in the *Tewa Tesuque* opinion it appears that the plaintiffs sought the cancellation of the lease because of the lack of an environmental impact statement. The court said . . . that the failure to file an impact statement was rendered moot by *Davis* and went on to affirm the trial court's dismissal of the action on the ground that the Tribe was an indispensable party. In so holding the court discussed . . . the four factors mentioned in Rule 19(b) and rejected each as a ground for permitting the action to proceed in the absence of the Tribe.
>
> In *Tewa Tesuque* the attack was on the lease and the action sought cancellation. In the instant case the attack is on the adequacy of the impact statement which the Secretary must consider before approving or rejecting the Navajo-Exxon agreement. The plaintiffs seek relief from the consequences of action based on the inadequate EIS. A holding that the EIS is inadequate does not necessarily result in prejudice to the Tribe. The only result will be a new EIS for consideration by the Secretary. The requested relief does not call for any action by or against the Tribe. Our attention is called to no tribal remedies or procedures available to the plaintiff for attack on a federal EIS.
>
> Dismissal of the action for nonjoinder of the Tribe would produce an anomalous result. No one, except the Tribe, could seek review of an environmental impact statement covering significant federal action relating to leases or agreements for development of natural resources on Indian lands. NEPA is concerned with national environmental interests. Tribal interests may not coincide with national interests. We find nothing in NEPA which excepts Indian lands from national environmental policy.

*Id.* at 558-59.

After reviewing these decisions, the court believes that the present case more closely

aligns with *Manygoats* than *Tewa Tesuque*. Unlike the present case, the plaintiffs in *Tewa*

*Tesuque* sought cancellation of the disputed lease. Cancellation or rescission is an equitable

remedy that terminates or undoes a contract and restores the parties to their pre-contract

positions. *See* 13 Am. Jur. 2d Cancellation of Instruments § 1 ("'Cancellation of instruments'

generally refers to the process by which a court terminates, cancels, rescinds, or nullifies a

contract or other instrument and orders restoration of the parties to the status quo.").[10]  When

granted, "rescission or cancellation . . . wipes out the instrument, and renders it as though it does

not exist."  *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 446 (4th Cir. 2004); *accord*

12A C.J.S. Cancellation of Inst. § 5.  Here, Hayes does not seek to permanently undo the

Chaparral lease.  Rather, he merely seeks a declaration that a condition precedent to the lease's

effectiveness (agency approval) has not validly been performed and, consequently, that the lease

is not (yet) legally operative.  *Cf. Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of*

*Florida*, 692 F.3d 1200, 1211-12 (11th Cir. 2012) ("The straightforward text of 25 U.S.C. § 81

makes plain that a contract governed by this statute is invalid until the Secretary has approved it.

. . . The Secretary's approval is a condition precedent to the validity of any lease covered by 25

U.S.C. § 81.").  Such relief is virtually indistinguishable from that sought in *Manygoats*.

Although the plaintiffs in *Manygoats* did not seek a declaration that the lease at issue was void,

they *did* seek to enjoin the performance of that agreement based on theory that the DOI's

approval thereof violated NEPA.  As *Sangre* makes clear, such an injunction, when entered,

necessarily invalidates the underlying lease.  *See* 932 F.2d at 894-95.  Put differently, when a

lease requires agency approval to be legally operative and a court later determines that the

agency approved such a lease in violation of NEPA, that determination necessarily invalidates

---

[10] *See also Rutland Marble Co. v. Ripley*, 77 U.S. 339, 356 (1870) (referring to cancellation as
the "undo[ing of] a bargain"); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1
F.3d 639, 641 (7th Cir. 1993) ("A successful rescission action annuls the contract and returns the
parties to the status quo ante."); U.C.C. § 2-106(4) (Am. Law Inst. & Unif. Law Comm'n 1977)
(defining cancellation as "put[ting] an end to the contract"); *Cancellation*, Black's Law
Dictionary (8th ed. 2004) (defining cancellation as "[a]n annulment or termination of a promise
or an obligation" as well as "[a]n equitable remedy . . . annul[ing] outstanding void or rescinded
instruments").

the underlying lease, unless or until it is validly approved.  This is true regardless of whether the plaintiff seeks injunctive or declaratory relief.

Although the distinction between cancellation and the relief sought here may appear subtle, it is a meaningful one for Rule 19 purposes.  Unlike cancellation, the relief sought here does not abolish or permanently undo the Chaparral lease.  Rather, it merely declares that the lease is not *yet* legally operative and, critically, still allows Chaparral and the OMC to perfect their agreement by obtaining valid agency approval.  In this way, the relief entered here does far less damage to the OMC's interests than cancellation of the lease.  Moreover, to ignore this distinction would create a conflict between the Tenth Circuit's decisions in *Sangre* and *Manygoats*, on one hand, and *Tewa Tesuque*, on the other.  The court declines to adopt such a reading of the Tenth Circuit's case law.

In sum, the present case falls squarely within the Tenth Circuit's holding in *Manygoats*. As in that case, dismissal here effectively insulates an entire category of agency action from judicial review.  Specifically, it precludes review of the Superintendent's approval of oil and gas leases and drilling permits in Osage County for compliance with NEPA.[11]  Under these circumstances, the court concludes that equity and good conscience counsel in favor of allowing the case to go forward among the existing parties.

---

[11]  The OMC contends that this result is a necessary consequence of the doctrine of tribal sovereign immunity.  The court disagrees.  Here, Congress has specifically established that the OMC's oil and gas leases receive approval from the Secretary of Interior, *see* 1906 Act § 3, that the Secretary's approvals comply with NEPA, *see Davis*, 469 F.2d at 596-97, and that interested parties have the right to seek judicial review of the Secretary's NEPA compliance, *see Morris v. U.S. Nuclear Regulatory Comm'n*, 598 F.3d 677, 690 (10th Cir. 2010).  Continued enforcement of this regulatory scheme counsels in favor of allowing the present case to go forward among the existing parties.  *See Manygoats*, 558 F.2d at 558-59; *cf. Nat'l Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 363 (1940) ("In a proceeding so narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights.").

WHEREFORE, the Motion to Dismiss for Failure to Join a Necessary and Indispensable Party [Dkt. #132] of intervenor-defendant the Osage Minerals Council is denied.

IT IS SO ORDERED this 23rd day of March, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT